Good morning, ladies and gentlemen. We welcome District Judge Paul Meyer of the Northern District of Illinois, who is sitting with us today. Welcome. Thank you. Our first case for this morning is Tri-Corp Housing against Bauman. Mr. Matchwack. Thank you. Good morning. May it please the court, my name is John Matchwack, and I represent the Plaintiff Appellant, Tri-Corp Housing, in these proceedings. Tri-Corp Housing is a non-profit corporation that, in the Milwaukee County area, has provided both low income and housing, and housing specializing for people with handicapped by mental disabilities. It did provide community-based housing in the near west side of Milwaukee. But the cases against Robert Bauman, who moved into the neighborhood of one of Tri-Corp's facilities, West Samaria, West Samaria had been there since about 1977, under predecessor, and Tri-Corp providing housing for the mentally handicapped, Bauman moved in about 1997, was elected in 2004 as alderman of the district, and began a persistent campaign to drive West Samaria out. West Samaria had to depend upon permits to operate at the location. It did obtain all required permits from the city of Milwaukee by obtaining a reasonable accommodation through hearings before the Board of Zoning Appeals for the city of Milwaukee. Alderman Bauman both contested those hearings, but did not prevail, Tri-Corp got its special use permit to prevail. Alderman in 2006, Alderman Bauman... Is there any allegation that he did anything other than speak his mind? Yes. He did, in 2007, he directed the department to use his power to direct the Department of Neighborhood Services to issue an order to close down Tri-Corp without an investigation. What power does an alderman have to do that? He does not go in the chain of command. Right, so in other words, you're alleging he spoke. He didn't have any legal authority there, he spoke, he told them to do something. So my question is, what part of the Fair Housing Act regulates pure speech? I think that speech, if the 3617, where that provision of the Fair Housing Act, which prohibits intimidation, interference with rights established under the Fair Housing Act. I think he did that both with the... Do you have... I don't see any language there that purports to deal with speech. Do you have any judicial authority that applies that statute to condemn speech? Well... I hope you see that there's going to be a big problem under the First Amendment with reading a statute to condemn speech. I hope you see that. I understand that, I do, but there have been cases under the Fair Housing Act where speech is not implemented in like a constitutional, if those speeches implemented in the chain of events. Go back to my question. Do you have any case holding that section 3617 prohibits speech? Anybody's speech. I cannot tell you a case that expresses it in those precise terms. I can... I didn't ask anything precise. I just said speech. There may be some cases distinguishing commercial speech from non-commercial speech. The Fair Housing Act has been applied to advertisements. There's always a problem about what happens in the world of commercial speech, but we're not dealing here with commercial speech so far as I can figure. You say you're not aware of any case saying that 3617 prohibits non-commercial speech. I am aware of cases that I've read that say that in fact there is... that speech is used to harass, to threaten, to interfere with people's rights to fair housing as a vehicle. And I think... Threats are one thing, right? I think we can probably all agree that threats are not protected speech, right? But... And we can imagine concerted efforts by neighbors. Let's say a weekly cross burning, for example, as expressive activity that would probably not be protected as a means of driving unwelcome families out of a neighborhood. But what you've alleged here looks pretty close to the core of political speech. I guess I disagree with that because... Well, let's... Sorry, go ahead. I mean, you have... The political speech would take place in an avenue where there's an open hearing, which did happen, where Tricorp is applying for reasonable accommodation. You don't think political speech takes place in the back corridors of government? In closed committee meetings? In private letters? Private conversations? Well, I think speech takes place in every day of the life. But you have... If you said that no form of speech can be attacked under the Fair Housing Act, you'd have to say that no form of speech would ever interfere in a relationship such as that Tricorp had with Milwaukee County, where lies basically are used to... And speech is used to convince Milwaukee County to take the residents out of the facility. I hope you're not suggesting that in the world of politics, lies or deceit is unprotected. You know the Norr-Pennington Doctrine, don't you? Which holds that lies and deceit are protected as part of normal politics. But is... I don't think that interference is protected. And how can the statute prohibit interference with exercise of the rights, with suggesting that... I mean, it would just totally denude the statute to suggest that if any part of the interference involves speech, there could be no interference. Nobody's taking that, suggesting that extreme of position, counsel. But suppose a member of Congress proposed a legislative amendment that would reduce funding for Fair Housing Act enforcement. Would that... That would seem to violate the FHA under your theory. I don't think it would violate... Why not? Because you're talking about legislative speech, you're not talking about interference with a particular right protected under the Fair Housing Act. The Fair Housing Act here gives Tricorp an avenue to get a reasonable accommodation to occupy the West Samaria. It established that. It got it, right? Pardon? It got it, correct. It got it. And then 3617 prohibits interference with that right. Was any of the interference successful in your view? Yes. And tell me about that. This is what happened. First in 2007, this was after the reasonable accommodation was established, the aldermen directed DNS to shut down West Samaria. What happened then, you have 90-some residents that are a fragile population that are here in the facility. Okay, but that was DNS that took this action, right? Okay, but then... That wasn't... Bauman wanted DNS to take this action, but it was DNS that actually engaged in the activity. I think it's pretty clear from the record that he directed DNS because DNS didn't even investigate. But he doesn't... DNS maybe was cowed by him, but DNS wasn't actually controlled legally by his direction. I don't think there's an ordinance that would give him authority over DNS, but... So maybe they felt pressure from him of some kind, and that's why they took the action that they did. I would think that when an alderman calls, they would do his direction. But the zoning board didn't, remember? He attempted to influence the zoning board, and they nevertheless stood by the decision to allow Tricorp the reasonable accommodation in West Samaria. That's correct. I mean, that's correct. I mean, they're different players. But then after this, in 2007, whatever conduct Robert Bauman was engaged in, the income for I think that... Will there be a continued existence? We recovered from that. Tricorp recovered from that by the end of 2007. And despite further efforts, Mr. Bauman's wild claims that there were sexual assaults in the facility and whatnot, population came back. But then he went behind the scenes to Milwaukee County in a meeting where not even involving Tricorp and convinced the county to start taking residents out of West Samaria and moving them elsewhere. Now, this eliminated the income base for the whole West Samaria and took the institution down. I mean, there's a very dramatic harm that happens at that point in time. And the... Suppose Mr. Bauman had reasons for his statements to Milwaukee County. Suppose he genuinely believed that the building was unsafe for its residents, that there was a body found in there that had been... He genuinely believed the body had been ignored for four days, that people were wandering out in the streets. And he felt these people were unsafe and made efforts on his own behalf to get the facility closed down. Is that improper? I think that's a fact issue. I think it's a fact issue in the case. It's something he can assert that we can counter with the fact that he never was in the building in his life, although invited to be in there, was offered to tour the facility, was offered to do X, Y, and Z, and never did. So whether his speech is protected would depend on how much investigation he had done or whether it was truthful in the eyes of somebody. I think you can go beyond the limits here. And with what he did with interference, I think the interference with the county is just plain more than speech. I think it's pressure. I think it's just plain a lot more than speech in Philadelphia. What evidence is there of more than speech? Well, at least the Court of Appeals for the state of Wisconsin indicated that there's heavy circumstantial evidence in the case because there's two facilities operated by Tricorp. One was two blocks from Alderman Bauman's house. The other one was not operated the same way, subject to the same mortgage. When the county started relocating out of West Samaria, the other institution carried on just fine. It was, there's no, the same mortgage threat. Why is that circumstantial evidence of more than speech? What is the, let me repeat the question, what evidence is there of something more than speech? Well the, at least the Court of Appeals for the state of Wisconsin took that as evidence of Torch's interference with contract. To me, interference. Could you answer the question? What evidence is there of something more than speech? There was perhaps temporarily successful speech, but the fact that speech is persuasive doesn't make it something other than speech. No, but I do think that he does not have a, I think he does not, he's violating the rights of these people. I, yeah, I can't, I can't answer that. No, that doesn't have anything to do with whether there was something more than speech. I can't, I can't tell you that he went and put a gun to the, some county administrator's head and said do this. I take it you're, that you are conceding that he had no legal authority over this issue  He had no legal authority to tell the county. So there was nothing he could have done in an official capacity. All he could do was speak. If the head of the FTC gets called before the House Commerce Committee and gets dingalized, that is browbeaten by the chairman of the committee, and then does what the committee chairman asks, is the committee chairman liable to say the company that's injured when the FTC brings an action? I think, you know, I, I, in the, in the, I don't know enough about the circumstances. The answer is unambiguously no. Okay. Just unambiguously no. And I'm trying to figure out why, in your view, this would be different. Because the statute, two reasons, I mean I think that there's a 1983 action because he's using his powers as an alderman inappropriately to. Chairman Dingell used his power all the time to get federal agencies to do what he wanted. All the time. Well, I, I, I start with the premise that there's a right that Tricorp had to, that it deserved protection under 1983, that had a right not to be interfered with by somebody acting under, under color of law. I think that's what Alderman Baumann did. Separately, I think that there's a right established under the Fair Housing Act, precisely, that the handicapped people have a right to, to a reasonable accommodation to live in the, live in this residence. And I think that the, under 3617, that right was interfered with. I, I, you know, I, I can't, I, I understand, I understand the question, but I think that almost every form of conduct has to involve speech in some fashion or another. I, I don't think that we can be living human beings without using speech to, to do it. But here's a statute that prohibits it, and here's a right that was interfered with. I know that the light is on. Could I ask you, counsel, what section 1983 adds for you as distinct from a direct claim under the Fair Housing Act? I think there's really two different claims. I mean, the, if you, the elements of a, of a 1983 claim are that you have a right protected by the Constitution or U.S. law, and a party interferes with it, acting under color of state law. I think separately, so I think... Look, under, under the Fair Housing Act, section 3613, if you could prove a violation, you would have access to compensatory damages, punitive damages, and attorney's fees and costs, right? Yes. And injunctive relief. Yes. You don't have to prove action under color of state law, do you? Well, no, I, I think... So, so what does section 1983 add that the Fair Housing Act doesn't already have? Okay, I, I think it's two, I thought about that, I think it's two separate causes of action. I think 1983, you prove, one, Bowman subjected Tricorp to deprivation of rights, privileges, or immunity secured by the Constitution or the laws of the United States, two, that Tricorp was harmed by Bowman's conduct, three, Bowman acted under color of state law, and the separate cause for, under the Fair Housing Act would be, one, Tricorp is a protected party under the Fair Housing Act, two, Tricorp was engaged in the exercise or enjoyment of its fair housing rights or was engaged in... To prove your, your 1983 theory, you have to prove a violation of the FHA, correct? I think you have to, no, I, I think you, you have to prove that the, that the Tricorp had a right established by the FHA. And you have to prove he violated that right, correct? Yes. Okay. You have to prove, you have to prove that he subjected Tricorp to a deprivation of that right. Yes. Okay. So, let me go back to the original question. What does a section 1983 claim add that is not already available under the Fair Housing Act except that you have to prove a couple of extra, additional elements and you have to cope with a potential qualified immunity defense? I think this case is, is unique in the sense that Tricorp already has an established right. I don't think it has to go back and prove that it has a right to a reasonable accommodation in order to show that woman... No. Counsel, you're not, maybe we're not connecting. Probably are not. 1983, you, you agree with me, you have to prove a violation of the Fair Housing Act under the theory you're proposing, correct? I think you have to prove, not necessarily, I think you have to prove that there's been a deprivation of a right established under the Fair Housing Act. I'm not trying to mince words, I really am not. I am totally lost by the distinction you're trying to draw. Here's the difference. You're not dealing with a situation where Tricorp is applying for a reasonable accommodation from the get-go. In that case, you might suggest that there's a Fair Housing Act right of action there and somebody might say... Under 3604, correct? Correct. So what about 3617? I think here, you have an established right to a reasonable accommodation that you can enforce under either the Fair Housing Act, following certain elements, and under the Section 1983. Thank you. I think that one of the differences is that... Thank you. That's all. Mr. Smolkowicz. May it please the Court, I try to address, first of all, the area of inquiry that began in the exposition of the appellant's side of the case, and that deals with 3617. Well, they usually get called inquisitors, but okay. I didn't mean that. Logically, with respect to 3617, I think the cases that, at least that have been presented to the Court or cited to the Court, including Block and Halperin, for example, where there has been a discussion by this Court of a violation of 3617 involves speech plus. There is some allegation of speech by neighbors or a condominium association in the sense that homeowners, condominium owners, were told something could or could not be done, or they were harassed in some form of either written or oral speech. But there was more than just speech. There was destruction of property, for example. There was removal of property, for example. And while in the Halperin case, certainly there was no authority granted to those neighbors by any articles for a condominium association, for example, to take that kind of action. It was completely illegal, for example, to destroy property. There was something more than speech. And getting back to this case, there has been no showing of anything other than some form of speech by Alderman Baumann, first as a witness slash advocate in the initial reasonable accommodation hearing back in, I think, 2006, where the accommodation was granted by the Board of Zoning Appeals, a citizen board of the city of Milwaukee, in spite of the alderman's apparent objection to the property and contest to the property. The next speech comes in after there is a person, I believe it's Mr. Drozdy, who's found dead in the property, and the alderman contacts someone from the Department of Neighborhood Services. It's without question the Department of Neighborhood Services is under the direct supervision of the Commissioner of Neighborhood Services for the city of Milwaukee. That's a person or an individual who is nominated by the mayor and appointed by the entire Common Council, not just one member of the Common Council. And once again, he is apparently, or the department is persuaded to, perhaps by Alderman Baumann, to issue an order because of what is appearing to be a violation of their special use permit that they received from the Board of Zoning Appeals and the orders that they have. But again, that's just speech by one alderman to an administrative agency at most, and incidentally that is, as the record reflects, the statement of facts from the district court reflects, that's appealed in a timely fashion and it stayed. So the order is not effected. There is no removal of individuals from the property at that point. It's not ordered closed by the Department of Neighborhood Services. There is no direct ability, either directly by something he signs or indirectly by someone he orders in either of those situations. The last circumstance that we're talking about here, that again I would submit is nothing more than speech, is the meeting in October of, I think it's 2007, which the alderman does not initiate, he does not organize. It is at the behest of, I believe, the Executive Director of Wisconsin Housing WIDA, and I'm sorry I don't have all of the, I think it's Wisconsin Housing and Economic Development Authority. That's a state agency, that's a state entity. They organize it because there is a default in the mortgage by Tricor, and it's for both properties, and they want to decide with these various interested parties what they're going to do or they want to inform them what they're going to do next. And at that time, I don't think there's any dispute about this, WIDA announces they're going to foreclose on the properties. At most at that point, alderman Baumann does one or two things. He says, look, I don't think, he offers an opinion, I don't think this is an appropriate place for a facility like this. I think it has inherent problems no matter who runs this facility. And secondly, he apparently, given the facts in most favorable light to the plaintiffs, encourages, persuades somehow an entirely separate government entity, one that is not even answerable to the entire Common Council of the city of Milwaukee, much less an individual, and that's Milwaukee County. He persuades someone at Milwaukee County, well, let's move, they're going to move their clients out of this facility on Richardson Street, many of whom were apparently moved to the other facility in West Dallas. And so, again, these are instances of speech, not speech plus, not the kind of ability to order or direct a subordinate or on his or her own, for example, a fire marshal or a fire chief or a police chief or the commissioner of the Department of Neighborhood Services, who himself is not sued or the department or the city is not sued in here, in spite of the order that was appealed and never put into effect. Excuse me for a moment. Were Tricorp's original financial difficulties in any fashion, according to the plaintiff, at least a function of Bauman's activities? I know that it's the allegation that Milwaukee County began moving residents out. That created a financial problem. But there was some financial issues even beforehand, correct? It's my understanding there were financial issues beforehand from the record of the audits that were introduced. There was a notice at one point, bring your account current, and then Tricorp did, but they had been delinquent at one point. Well, they were delinquent. I believe what happened is in the beginning of July 2007, there was an automatic draw. In other words, there's a bank draw that WIDA draws automatically. Tricorp doesn't have to sign a check. WIDA attempts the automatic draw, is rejected by the bank for insufficient funds. WIDA tries it again later that month, later in July, and is successful. After that, there are no other payments. And there is never another payment, and the property is lost in foreclosure, as a matter of fact. And by the own representation today, apparently the financial issues, if there were any connected to any kind of uncertainty about placing individuals in the property in 2006 or 2007, had been resolved, and Tricorp had recovered from any issues about that. And so in sum, with respect to 3617, which obviously also the district court viewed it as not having been directly pled, the district court viewed it as only an asserted right under 1980, a vehicle, asserted right then using the vehicle of 1983. If there is a direct action here, I would submit it fails, because it is not the kind of interference that the statute has in mind. Counsel, if I could follow up on that pleading problem. As I understand the law, the plaintiff in his complaint doesn't even need to mention the statute under which he's suing. He doesn't need to specify whether it's 1983 or a direct claim under 3613 of the Fair Housing Act. So how could there be any prejudice to you or your clients to allowing the amendment that was sought? Well, the district court reached that conclusion. I'm not here to necessarily state that we didn't address the merits of the 3617. Clearly you did. Clearly we did, and clearly we did at the district court level, and to that extent there wasn't prejudice. It runs in line with, if I may, Your Honor, it runs in line with the question that you were asking before about what's the value of layering a 1983 claim on top of a 3617 claim? Don't you have to prove a violation of 3617 on top of whatever you have to prove for 1983? I would submit that that's the correct analysis, that there can be no violation of a statutory right unless you establish a violation of the statutory right. Tricor has attempted to take the view, in essence, that any kind of discrimination, whether it meets the four corners of a statutory right or not, if it involves some kind of discrimination against any of the groups identified in the statute, including those with disabilities, that it's actionable under 1983. I would submit there's no authority for that proposition. There's none that's been cited. And last but not least, I don't want to miss the point, I think it's important, since Tricor up to this day has not cited any case for the proposition that speech only can be a violation of 3617, that leads to the next problem under 1983, which is the qualified immunity analysis that the district court engaged in and resolved by saying, there's no case authority for the proposition of a violation. Now, if you sue somebody, an individual, a private individual under the FHA, there's no defense of qualified immunity, is there? A private individual, that's correct. Okay. And in this case, Alderman Bauman, it's not clear to me how he was acting under color of state law, even, or certainly not exercising direct legal powers as an alderman. It's also not clear to me how qualified immunity would be available under Section 1983. The Supreme Court has told us, and I believe it was Richardson against McKnight, private prison guards, for example, who were sued under 1983 are not entitled to qualified immunity. I would think that that rationale might extend here. Well, there's something of a hodgepodge here, though, however, because while there's no claim, and we would certainly contest that there's any direct legal authority to order anything here, for example, to order a closure, to order a withdrawal of clients from the property and the like, nonetheless, the claim is that he, in essence, used his authority as an alderman, his position as an alderman to persuade people, that he would be more persuasive than Mr. or Ms. Jones, who lives next door and who comes in and says, I don't want that property there because, well, there was a dead person that was found in the building. And so I don't want to concede the point that 1983 is an appropriate vehicle here. I don't think the court should get to that. I think 3617 is come and gone. There is no valid claim under 3604 because alderman Baumann did not make the property unavailable. WIDA, to the extent that anybody or any entity made it unavailable, that's WIDA and the Wisconsin State Court of Appeals ruled as a matter of law that its actions were taken. There was no evidence that its actions were taken for any discriminatory purpose. Counsel, if I could just ask briefly, if I recall correctly, the district judge here commanded the tort claim to state court, correct? That is correct. Has anything happened in state court since that order? No. The state court action has remained in limbo pending the appeal here. And is it correct that on the state tort claim, when the Wisconsin Court of Appeals sent that back, it was without having considered any issue about whether Baumann's conduct was, quote, privileged under state tort law? Correct. If I recall the decision correctly, the Wisconsin Court of Appeals left open and wanted the parties to address in further evidentiary detail the question of privilege to speak in all of these contexts, particularly in the context, I assume, of the Board of Zoning Appeals hearings. And with that, unless the court has any other questions, I have nothing further to add. Thank you. Thank you. Okay, thank you very much. The case is taken under advisement.